WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF:<br>WVSV Holdings LLC,<br>              Debtor.<br>WVSV Holdings LLC,<br>              Appellant,<br>v.<br>10K LLC, *et al.*,<br>              Appellees. | No. CV-20-01927-PHX-JJT<br>BK NO. 2:12-bk-10598-MCW<br>ADV NO. 2:20-ap-00060-MCW<br><br>**ORDER** |

At issue is Appellant WVSV Holdings, LLC's Appeal (Doc. 15, "Appellant Opening Br.") of the United States Bankruptcy Court's Order dismissing Appellant's Complaint (Doc. 1). The Court also considered the Answering Briefs of Appellee 10K, LLC (Doc. 22, "10K Answering Br.") and individual Appellees Leo Beus, Annette Beus, Paul Gilbert, Susan Gilbert, Randy Stolworthy, and Kari Stolworthy (Doc. 21, "10K Members Answering Br."), as well WVSV's combined Reply (Doc. 29). For the following reasons, the Court will affirm the Bankruptcy Court's dismissal of WVSV's Complaint but reverse its award of attorney's fees.

**I.     BACKGROUND**

This appeal arises from a dispute over 13,000 acres of real estate in the West Valley known as the Sun Valley Property. In June 2002, Appellee 10K LLC's ("10K") manager,

Phoenix Holdings II, LLC ("PHII") improperly sold the Sun Valley Property to Breycliffe, LLC ("Breycliffe"). (WVSV's Excerpts of Record ("EOR") at 126-27 ¶¶ 22, 23.) The parties commenced litigation (the "State Court Litigation"), which is the nexus of the current dispute. The first round of the State Court litigation settled pursuant to the terms of the "2002 Breycliffe Agreement" on June 4, 2002. (EOR at 126 ¶ 22.) That same day, the Maricopa County Superior Court enjoined 10K to comply with the 2002 Breycliffe Agreement (the "Mangum Judgment"). Subsequently, PHII arranged the sale of Breycliffe's rights under the 2002 Breycliffe Agreement to WVSV and its principal, Conley Wolfswinkel. 10K objected to the sale and in May 2002, sued PHII, Breycliffe, WVSV, and Mr. Wolfswinkel seeking a declaration invalidating the 2002 Breycliffe Agreement and vacating the Mangnum Judgment (EOR at 131 ¶ 58.) The Superior Court dismissed 10K's suit in June 2003 and was affirmed in January 2005. *See Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 276 P.3d 11, 19, 20 (Ariz. App. 2012).

However, in 2008, the Superior Court vacated the 2003 dismissal of 10K's declaratory judgment claim based on new evidence that WVSV and others committed extrinsic fraud on the state court. *See Cal X-Tra*, 276 P.3d at 25. The Court of Appeals affirmed in April 2012. *See id.* at 32. This enabled 10K to reassert its declaratory judgment action against WVSV. However, prior to 10K filing an amended complaint in the State Court Litigation, WVSV filed for bankruptcy protection on May 14, 2012. (EOR at 27 ¶ 34.) 10K was the main creditor, holding a $45 million secured claim for the purchase of the Sun Valley Property as well as an unsecured claim for aiding and abetting against WVSV. As part of the bankruptcy proceeding WVSV filed a Schedule B requiring it to list its personal property. (10K's Supplemental Excerpts of Record ("SEOR") at 124-26.)

In November 2013, 10K filed a Third Amended Complaint in the State Court Litigation reasserting its declaratory judgment claim that was dismissed in 2003 and bringing additional tort claims against WVSV and Mr. Wolfswinkel. (EOR at 162-66 ¶¶ 129-142.)

1    On March 6, 2014, 10K and WVSV reached a settlement in the bankruptcy pursuant
2  to the terms of the Settlement Term Sheet ("Settlement Agreement"). The Bankruptcy
3  Court then entered an Amended Order (the "Confirmation Order") confirming 10K's First
4  Amended Plan of Reorganization (the "Confirmed Plan" or "10K Plan"). The Confirmation
5  Order incorporated the Settlement Agreement, which stated, "The 10K Plan, this Order and
6  the documents incorporated herein are the controlling documents which govern the
7  treatment of all creditors' claims." (EOR at 34 ¶ 20.)

8    In January 2017, the Superior Court found for 10K on multiple claims in the State
9  Court Litigation for total damages of $225,031,215. It also vacated the Mangum Judgment
10 due to extrinsic fraud. However, it denied 10K's request for declaratory judgment
11 invalidating the 2002 Breycliffe Agreement. The Court of Appeals affirmed the decision
12 on November 8, 2018. *10K, L.L.C. v. W.V.S.V. Holdings, L.L.C.*, No. 1 CA-CV 17-0155,
13 2018 WL 5904513, at *13, 16 (Ariz. App. Nov. 8, 2018).

14   10K subsequently requested that the Bankruptcy Court implement the 10K Plan by
15 compelling the sale of the Sun Valley property. Over WVSV's objection, the Bankruptcy
16 Court agreed and entered an Order providing WVSV 20 months to market and sell the
17 Property. (SEOR at 005, 032, 094.)

18   Rather than sell the property, WVSV filed a lawsuit against 10K for declaratory
19 judgment to extend the deadlines related to the sale of the Sun Valley Property, wrongful
20 institution of civil proceedings ("WICP"), and slander of title. It also brought the WICP
21 and slander of title claims as well as a fifth claim for aiding and abetting tortious conduct
22 against individual Appellees Leo Beus, Paul Gilbert, and Randy Stolworthy as well as their
23 spouses (the "10K Members"). The claims all arose from 10K's declaratory judgment
24 action seeking to invalidate the 2002 Breycliffe Agreement in the State Court Litigation.
25 WVSV had not previously asserted these claims in its Bankruptcy Schedules, Disclosures,
26 or any other manner during the bankruptcy proceeding. (SEOR at 124-26.) Appellees
27 removed the complaint to the Bankruptcy Court and filed a Motion to Dismiss based on
28 judicial estoppel, equitable estoppel, and multiple other grounds. The Bankruptcy Court

requested supplemental briefing on two issues: 1) whether the Court had jurisdiction over WVSV's claims; and 2) whether the 10K Plan intended WVSV's claims to be subsumed into the completed State Court Litigation. (SEOR at 116.)

After a full round of briefing and oral argument, United States Bankruptcy Judge Madeline C. Wanslee found that while the Bankruptcy Court did not have jurisdiction to decide WVSV's claims on the merits, it had continuing jurisdiction to interpret and implement the 10K Plan and thus determine whether WVSV waived its claims by not asserting them pre-confirmation. (EOR at 363:14-364:6.) The Bankruptcy Court reasoned that "any claim that relates to the actions of the parties in 2003 or any time before the May 14, 2012 bankruptcy filing date are included within the bankruptcy case because they're property of the estate and they are, therefore, part of the Confirmation Order." (EOR at 361:6-10.) Accordingly, the Bankruptcy Court found that the claims should have been adjudicated as part of the 10K Plan. Because WVSV did not assert them pre-confirmation, the claims were waived. (EOR at 365-67.) In a later ruling, the Bankruptcy Court awarded 10K and the 10K Members attorney's fees. (EOR at 410-11.)

WVSV appealed, contending that the Bankruptcy Court erred by granting Appellees' motion to dismiss and awarding Appellees' their attorneys' fees and costs. WVSV sets forth four issues for this Court's review: Whether the Bankruptcy Court erred in: 1) granting Appellees' motion to dismiss and dismissing the adversary complaint in its entirety; 2) dismissing WVSV's claim for wrongful institution of civil proceedings; 3) dismissing the declaratory judgment and the aiding and abetting tortious conduct claims; 4) granting Appellees' their attorneys' fees and costs. Issues 1 through 3 implicate many of the same legal and factual questions.

## II.     LEGAL STANDARD

A party may appeal a Bankruptcy Court's Order to the District Court if the Order is final and binding. 28 U.S.C. § 158(a). An appellant may choose between a Bankruptcy Appellate Panel, if one exists in the Circuit, and a District Court to hear its appeal. 28 U.S.C. § 158(c). Thus, this Court has appellate jurisdiction to review all final and

binding Orders issued by the Bankruptcy Court. In ultimately resolving the substance of the appeal, the Court will review the Bankruptcy Court's conclusions of law *de novo*, its findings of fact under a clearly erroneous standard, and its interpretation of the 10K Plan for abuse of discretion. *See* Fed R. Bankr. P. 8013; *Wegner v. Murphy (In re Wegner)*, 839 F.2d 533, 536 (9th Cir. 1988) (citing *Pizza of Hawaii, Inc. v. Shakey's, Inc.* (*In re Pizza of Hawaii, Inc.*), 761 F.2d 1374, 1377 (9th Cir. 1985)); s*ee In re Alameda Investments, LLC*, 2014 WL 868605, at *3 (B.A.P. 9th Cir. Mar. 5, 2014) ("The bankruptcy court's interpretation of the terms of a confirmed plan is, in essence, an interpretation of its own order, which we review under the abuse of discretion standard.").

## III. ANALYSIS

### A. Issues 1, 2, and 3

WVSV argues that the Bankruptcy Court made multiple errors in dismissing its claims. The Court will first address whether WVSV's claims were property of its estate arising out of pre-petition conduct. The answer to this question determines whether the Bankruptcy Court had jurisdiction to dismiss WVSV's claims and if so, whether it properly found that WVSV waived its claims by not asserting them pre-confirmation. Separately, WVSV argues that even if the Bankruptcy Court correctly dismissed the claims against 10K, it erred in dismissing the claims against the 10K Members.

#### 1. The State Court Litigation Claims Arose Pre-petition and Were Property of Appellant

The Bankruptcy Court found that WVSV's claims were property of the bankruptcy estate. Specifically, it held:

> Any claim that relates to the actions of the parties in 2003 or any time before the May 14, 2012 bankruptcy filing date are included within the bankruptcy case because they're property of the estate and they are, therefore, part of the confirmation order…
>
> So this court holds that, to the extent that WVSV had any claims against 10K or 10K's members based on the state court litigation, they arose pre-petition and were included in the agreed-upon confirmed plan [10K Plan]. These

1
2
      claims were simply related to the pre-bankruptcy past and are, indeed, assets of the bankruptcy estate, property of the estate.

3
4
(EOR at 361:6-10, 366:19-24.) The Court will review these findings *de novo*. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986)

5
6
7
8
9
10
11
12
13
14
      The Bankruptcy Code defines "claim" as "right to payment, whether or not such right is reduced to judgment, liquidated, *unliquidated*, fixed, *contingent*, matured, *unmatured*, [or] *disputed*…" (emphasis added). 11 U.S.C. § 101(5)(A). Its definition of "property" includes "all legal or equitable interests of the debtor in property as of the commencement of the case, proceeds… [and] profits of or from property of the estate, [as well as] "interest in property that the estate acquires after the commencement of the case." 11 U.S.C. §§ 541(a)(1), (6), (7). "The scope of section 541 is broad, and includes causes of action." *Sierra Switchboard Co*, 789 F.2d at 707. To determine whether a claim is property of the bankruptcy estate, courts ask whether the claims are "sufficiently rooted in the prebankruptcy past." *Segal v. Rochelle*, 382 U.S. 375, 380 (1966).

15
16
17
18
19
20
21
22
23
24
25
26
27
28
      Here, WVSV's claims arose from the pre-petition proceedings and thus are property under the Bankruptcy Code as well as Ninth Circuit caselaw. The WICP and declaratory judgment claims allege harm starting in 2003 from 10K's initial declaratory judgment claim to invalidate the 2002 Breycliffe Agreement. WVSV's WICP claim expressly identifies 10K's filing of the 2003 declaratory judgment action as the basis for its cause of action and alleges that it "tied-up WVSV's title to the Sun Valley Property for more than fifteen (15) years." (EOR at 90 ¶¶ 132-35.) Both claims for declaratory judgment sought extensions on a loan and Junior Trust deadlines based on "the 15 years that 10K wrongfully attempted to assert title to the Sun valley Property" through its pursuit of a civil claim to invalidate the 2002 Breycliffe Agreement. (EOR at 88-90.) Accordingly, each claim is sufficiently rooted in the prebankruptcy past and related to WVSV's legal or equitable interest in the Sun Valley Property. *Segal*, 382 U.S. at 380; s*ee Cox v. Old Republic Nat'l Title Ins. Co*., 743 Fed. App'x. 104, 105 (9th Cir. 2018) (plaintiff's post-petition litigation

claims against lender asserting that a loan was invalid or rescinded pre-petition were property of plaintiff since they were related to legal or equitable interest in real property).

WVSV argues that its WICP and declaratory judgment claims did not exist until the Court of Appeals affirmed the denial of 10K's declaratory judgment claim. (Appellant Opening Br. at 17, 23.) Specifically, it contends that a WICP claim cannot be pled without final disposition, *See Frey v. Stoneman*, 722 P.2d 274, 277 (1986) (en banc), and the declaratory judgment claims would have been unnecessary if 10K successfully invalidated the 2002 Breycliffe Agreement. (Appellant Opening Br. at 17, 23.) However, whether a claim is ripe or contingent on future events does not dictate whether it is a "claim" under the Bankruptcy Code. *See* Section 101(5)(A) (definition of claim includes those that are unliquidated, contingent, unmatured, and disputed); *In re Touch America Holdings, Inc.*, 381 B.R. 95, 107 (Bankr. D. Del. 2008) ("A claim is contingent where it 'has not yet accrued and ... is dependent upon some future event that may never happen.'").

WVSV's right to relief was contingent; it depended on 10K losing in the state court action. But other than that, the significant events giving rise to the claim took place pre-petition. More generally, Section 101(5)(A) illustrates that there is no bright line rule that all necessary events giving rise to a claim need to have taken place. Importantly, WVSV did not need to actually file the lawsuit. Rather, as discussed *infra*, it needed to assert the claims through the Bankruptcy Schedules or Disclosures prior to confirmation in order to put Appellees on notice. Therefore, the Bankruptcy Court did not err in finding that WVSV's claims constituted pre-petition property.

### 2. Judicial Estoppel Barred State Law Claims

Having determined that WVSV'S claims constitute pre-petition property, the Court finds that WVSV was judicially estopped from bringing the claims post-confirmation. While the Bankruptcy Court did not expressly rely on judicial estoppel, its ruling invoked the judicial estoppel principle that claims "not previously asserted by the Debtor… have been waived." (EOR at 367:11-13.)

Judicial estoppel—"an equitable doctrine invoked by a court at its discretion"—exists to protect the integrity of the judicial process by "prohibiting parties from *deliberately* changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations and internal quotation marks omitted). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire*, 532 U.S. at 749 (citations and internal quotation marks omitted). The application of judicial estoppel is appropriate to bar litigants from taking inconsistent positions not only in the same case, but also in two different cases. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001).

Courts consider three factors when determining whether to impose judicial estoppel: 1) whether the party's later position is "clearly inconsistent with its earlier position"; 2) whether the party succeeded in persuading the court to accept its earlier position, creating the perception that the first or second court was misled; and 3) whether the party seeking to assert an inconsistent position would "derive an unfair advantage or impose an unfair detriment to the opposing party." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (citing *New Hampshire*, 532 U.S. at 570). The second factor – whether one of the courts was misled – is often considered dispositive. *Baughman*, 685 F.3d 1131, 1133 (9th Cir. 2012) (citing *Interstate Fire Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998).

"In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin v. Cnty. of Kauai Dept. of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). *See Hamilton*, 270 F.3d at 783 ("a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."). Even where plaintiff did not know all of the facts of his claim, judicial estoppel applies if the claim is not disclosed. *See Hay v. First Interstate Bank of*

- 8 -

*Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir.1992) (failure to disclose potential cause of action in bankruptcy schedules or disclosures where plaintiff did not know all underlying facts estops the debtor from asserting that cause of action).

Here, WVSV failed to disclose its claims in the Bankruptcy Schedules or Disclosures during the bankruptcy proceedings. Specifically, it marked "none" on its Schedule B and Amended Schedule B, which required WVSV to list all assets, including "[o]ther contingent and unliquidated claims of every nature." (SEOR at 124-26.) When WVSV brought the claims post-confirmation, its position was clearly inconsistent from pre-confirmation. The Bankruptcy Court accepted Appellant's position that it did not have any claims upon its confirmation of the 10K Plan. *Ah Quin*, 733 F.3d at 271. Moreover, 10K relied to its detriment on WVSV's representation that it did not have additional claims when it agreed to the 10K Plan. *See Hamilton*, 270 F.3d at 783. Therefore, WVSV is judicially estopped from bringing the pre-petition claims.

WVSV argues that judicial estoppel does not apply because it reserved all claims against 10K in its September 2012 disclosures. The September disclosures state, "[t]he debtor also preserves any and all claims available to it against 10K, LLC and its members, including but not limited to recovery of the amounts due the debtor if 10K, LLC is successful on its claims for rescission." (Reply at 3-4.) However, such broad disclosure of "any and all claims" is insufficient. *See Hamilton*, 270 F.3d at 784 (failure to disclose specific claims estopped plaintiff from bringing those claims post-confirmation). WVSV contends that it did not need to specify the claim because under Arizona law, inconsistent positions must be factual inconsistences for judicial estoppel to apply and WVSV's broad disclosure of all potential claims is not factually inconsistent with its current lawsuit against Appellees. (Reply at 4-5.) Neither WVSV nor the non-bankruptcy cases it cites in support distinguish between a factual inconsistency and any other inconsistency. *See State Farm Auto. Ins. v. Civil Service Emp. Ins. Co.*, 509 P.2d 725 (1973); *Colonia Verde Homeowners Ass'n v. Kaufman*, 596 P.2d 712 (Ariz. App. 1979). Regardless, *Hamilton* is clear that failure to list specific claims in the bankruptcy schedules or disclosures and then suing a

party on those claims constitutes an inconsistent position. 270 F.3d at 783-84; s*ee also Ah Quin*, 733 F.3d at 271 (9th Cir. 2013) (failure to disclose a specific claim estops party from bringing claim post-confirmation).

WVSV further argues that since it filed the Schedule B in 2012 and 10K did not file its Third Amended Complaint reasserting the declaratory judgment claim until 2013, WVSV did not have the opportunity to disclose its claims. (Reply at 5.) The Court remains unconvinced. As discussed *supra*, WVSV's claims are based on 10K's conduct starting with its 2003 declaratory judgment action to invalidate the 2002 Breycliffe Agreement. *See Hay*, 978 F.2d at 557. Moreover, 10K filed its Third Amended Complaint 5 months before the Confirmation Hearing and thus Appellant could have updated its Bankruptcy Schedules or Disclosures to include its claims prior to the Confirmation Hearing. The debtor's duty to disclose potential claims as assets continues after it files its schedules through the duration of the bankruptcy proceeding. *In re Coastal Plains*, 179 F.3d at 208; *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996); Fed. R. Bankr. P. 1009(a) (schedules may be amended as a matter of course before the case is closed). For these reasons, the doctrine of judicial estoppel bars WVSV from bringing claims not previously asserted in the bankruptcy proceedings.

### B. Jurisdiction

Likewise, the Court affirms the Bankruptcy Court's finding that it had jurisdiction to dismiss WVSV's claims. The Bankruptcy Court retains post-confirmation jurisdiction where there is a "close nexus" between the matter and the confirmed plan. *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005). "The interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.* Here, The Confirmation Order expressly preserved the Bankruptcy Court's ability to retain jurisdiction over adversary proceedings between Appellees and Appellant that "relate to the interpretation or enforcement of the 10K Plan or this Confirmation Order." (EOR at 35 ¶ 21(b).) It further provided the Bankruptcy Court with continuing jurisdiction to "enforce the provisions,

purposes, and intent of the 10K Plan… relat[ing] to [the] implementation of the 10K plan." (EOR at 35 ¶ 22(a).) The Bankruptcy Court correctly determined that WVSV's claims arose pre-petition and thus were property of WVSV's estate that needed to be disclosed pre-confirmation. WVSV's failure to do so followed by its lawsuit asserting the claims post-confirmation necessarily involves the implementation and enforcement of the 10K Plan and Confirmation Order.

WVSV points to the Bankruptcy Court's finding that it did not have jurisdiction to hear WVSV's tort claims on the merits as evidence that it did not have jurisdiction at all. (Appellant Opening Br. at 14.) The Court disagrees. The existence of WVSV's claims implicated the enforcement and implementation of the 10K Plan, which gave the Bankruptcy Court jurisdiction pursuant to the Confirmation Order. To the contrary, determining the merits of WVSV's claims does not relate to the 10K Plan's implementation or enforcement. Therefore, the Bankruptcy Court's two findings – that it did not have jurisdiction to decide the claims on their merits but did have jurisdiction to determine whether WVSV was estopped from the claims – are not mutually exclusive.

Relatedly, WVSV argues that the express language of the 10K Plan preserved its claims and removed jurisdiction from the Bankruptcy Court. WVSV points to the Settlement Term Sheet's language that the 10K Plan "preserves any and all claims the parties… *may raise*…" (emphasis in original) (Appellant Opening Br. at 21; EOR at 40.) But WVSV needed to provide notice of the claims, which it failed to do, in order for this provision to apply. WVSV further cites to the 10K Plan's provision, "[i]f the Debtor elects Option A, all such claims, including those against the Debtor and the Debtor's alleged claims against 10K, shall be resolved in the State Court. If the Debtor elects Option B, the Debtor shall fully and finally release any and all claims it may have against 10K or its members," (EOR at 40; Appellant Opening Br. at 22.) WVSV contends that it chose "Option A" and thus all claims must be resolved in state court. However, when it chose Option A, WVSV had not disclosed its claims as required in the Bankruptcy Schedules or Disclosures. Accordingly, there were no claims to preserve.

- 11 -

### C. 10K Members

WVSV contends that the Bankruptcy Court erred in dismissing its claims for WICP and aiding and abetting WICP against the 10K Members. After specifically considering the issue of whether the Confirmation Order, Settlement Agreement, and 10K Plan applied to the 10K Members, the Bankruptcy Court found that "[to] the extent that WVSV had any claims against 10K or 10K's members based on the state court litigation, they arose pre-petition and were included in the agreed-upon confirmed plan." (EOR at 366-67.) Later, in a Minute Entry explaining its attorney's fees decision, the Bankruptcy Court stated, "the settlement agreement entered into as part of the resolution of the contested confirmation hearing whereby WVSV stated it was settling the claims it had against both 10K and the Individual Defendants [10K Members] . . ." (EOR at 411.) The Court reviews the Bankruptcy Court's interpretation of the 10K Plan under an abuse of discretion standard. *See In re Alameda Investments*, 2014 WL 868605, at *3. The Court must find the decision "clearly erroneous" or that the "record contains no evidence on which [the Bankruptcy Court] could have based that decision" in order to reverse it. *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988).

In addition to WVSV's arguments that this Court has already addressed, WVSV contends that the 10K Plan does not bar its claims against the 10K Members because they were not parties to the 10K Plan or Settlement Agreement and thus the claims do not affect its implementation. (Appellant Opening Br. at 15; Reply at 26.) However, this alone does not mandate the reversal of the Bankruptcy Court's decision. First, the claims against the 10K Members arise from the same facts and allegations as the claims against 10K. Moreover, the 10K Plan expressly addresses WVSV's potential claims against the 10K Members:

> Any and all claims of 10K against Debtor or third parties including Conley Wolfswinkel, brought in the State Court Litigation are preserved. If the Debtor elects Option A, all such claims including those against the Debtor and the Debtor's alleged claims against 10K, shall be resolved in the State Court. If the Debtor elects Option B, the Debtor shall fully and finally release any and all claims it may have against 10K or its members.

(EOR at 17.) WVSV argues that it chose Option A and thus this provision is meaningless. (Reply at 26.) But this misses the point. The 10K Plan clearly contemplated WVSV's potential claims against 10K members. As discussed *supra*, when WVSV chose Option A, it needed to preserve its rights to bring the claims against 10K and 10K's members through the Bankruptcy Schedules or Disclosures. By not doing so, it waived the claims against the 10K Members. Notably, when WVSV did attempt to disclose its potential claims, it specified claims against 10K Members. *See* EOR at 174 ("[t]he debtor also preserves any and all claims available to it against 10K, LLC and its members…")

The 10K Plan further states that the Bankruptcy Court would not retain jurisdiction regarding the "[d]etermination of adversary proceedings and contested matters between the Plan Proponent, its members, the Debtor, Conley Wolfswinkel, and any other litigated matters instituted prior to the closing of the Chapter 11 Cases." (EOR at 19.) Again, the 10K Plan's language expressly treats 10K and the 10K members the same. WVSV needed to assert its claims against 10K and 10K Members pre-confirmation or otherwise they would be waived.

The Bankruptcy Court's determination that the 10K Plan applied to WVSV's claims against the 10K Members was not "clearly erroneous." Because WVSV failed to disclose such claims as required by the 10K Plan, it was judicially estopped from asserting them post-confirmation.

### D.   Attorney's Fees

WVSV appeals the Bankruptcy Court's award of attorney's fees. The Court reviews the award of attorney's fees for abuse of discretion or erroneous application of the law that constitutes "clear error." *In re Eliapo*, 468 F.3d 592, 596 (9th Cir. 2006).

The Bankruptcy Court awarded Appellees attorney's fees pursuant to A.R.S. § 12-341.01, which provides, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." The Bankruptcy Court found that this matter implicated two contracts – the Settlement Agreement and the Confirmation Order – that together served as the basis for its decision

to dismiss WVSV's claims. It further found that Appellees sought to enforce those contracts through its Motion to Dismiss WVSV's claims. (EOR at 411.)

In Arizona, a dispute arises under contract where the dispute would not exist but for the contract's existence. *Hanley v. Pearson*, 61 P.3d 29, 33 (Ariz. App. 2003) (citing *Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1142 (1982)). Here, WVSV brought non-contract claims focused on Appellees' alleged tortious conduct in attempting to invalidate the 2002 Breycliffe Agreement. (EOR at 61-90.) The dispute would have existed with or without the Confirmation Order and Settlement Agreement and thus did not depend on either agreement. Nether the Bankruptcy Court nor Appellees cite any caselaw to support its finding that A.R.S. 12-341.01 applies where only the defendant invokes the contract as a defense against plaintiff's noncontract claims. Therefore, the Court finds that the Bankruptcy Court committed clear error awarding attorney's fees pursuant to Section 12-341.01.

Appellees argue that even if the Bankruptcy Court erred in its reliance on the Settlement Agreement and Confirmation Order, there are alternative bases to support its attorney's fees award. First, 10K contends that Section 12-341.01 applies since WVSV's declaratory judgment claims were predicated on the 2002 Breycliffe Agreement as well as the Junior Trust Agreement. (10K Answering Br. at 29-32; 10K Members Answering Br. at 14-15.) The Court disagrees. The claims were based on 10K's conduct in relation to the agreements as opposed to the agreements themselves. *See Hanley*, 61 P.2d at 33 (fee statute does not apply "if the contract is a factual predicate to the action but not the essential basis of it."). Courts have found Section 12-341.01 applies to claims other than breach of contract; however, the breach of a contract was central to the matter. *Sparks*, 647 P.2d at 1142 (holding plaintiff's bad faith claim warranted attorney's fees pursuant to A.R.S. 12-341.01 because the tort of bad faith cannot be committed absent the existence of an insurance contract and a breach thereof…") Here, WVSV's claims did not require the breach of the 2002 Breycliffe Agreement. Notably, *Sparks* held that plaintiff's misrepresentation claim did not warrant attorney's fees because it "sounds mainly in tort

and its existence does not depend upon a breach of the contract of insurance." *Id.* Likewise, Appellees citation to *Modular Mining Systems, Inc. v. Jigsaw Technologies*, Inc., 212 P.3d 853, 860-861 for the proposition that Section 12-341.01 applies to both contract and intertwined tort claims is inapposite. In *Modular*, plaintiff brought claims for misappropriation of trade secrets and breach of contract. The court awarded fees for the trade secrets claims because they required the same fact development, research, and discovery. *Id.* Here, there was no such intertwining because WVSV did not bring a claim for breach of contract nor did its declaratory judgment claims relate to a contract claim. *See also Cashway Concrete & Materials v. Sanner Contracting Co.*, 761 P.2d 155, 157 (Ariz. App. 1988) (holding Section 12-341.01 inapplicable where breach of contract was factual predicate to action but claims at issue were unrelated). Section 12-341.01 thus does not apply.

The 10K Members further point to WVSV's request for attorney's fees in its complaint as evidence that the claims arose out of contract. (10K Members Answering Br. at 15.) The Court disagrees. WVSV did not request the fees pursuant to Section 12-341.01. Regardless, WVSV's claims did not merit attorney's fees and its errant request in its complaint does not mean that Appellees are entitled to them now.

Finally, Appellees contend that the attorney's fees provisions in the 2002 Breycliffe Agreement and Junior Trust Agreement (collectively, the "Agreements") warrant the fee award. (10K Answering Br. at 30-31.) The Agreements respectively state: "the prevailing party in any dispute shall be entitled to attorneys' fees and costs" as well as "the prevailing party in any dispute, whether litigation or arbitration, shall be entitled to attorneys' fees and costs…" (SEOR at 210, 216.) As discussed *supra*, WVSV's claims arose from 10K's attempt to invalidate the 2002 Breycliffe Agreement, not the Agreements themselves.[1] 10K cites no caselaw awarding attorney's fees pursuant to a contract's fee provision where there were no contract claims at issue and the claims did not arise from the contract. Instead,

---

[1] Importantly, the Bankruptcy Court made no finding regarding the Agreements' fee provisions but did state that the WICP and slander of title claims "may not fall under the terms of the two pre-petition agreements." (EOR at 411.)

- 15 -

10K cites one Arizona state law case for the broad proposition that "when a contract includes an attorneys' fees provision, fees are awarded in accordance with the terms of the contract and the trial court lacks discretion to refuse to award fees under the contractual provision." *A Miner Contracting Inc. v. Toho-Tolani Cty. Imp. Dist.*, 311 P.3d 1062. However, *Miner* analyzes whether a fee award was excessive as opposed to when a fee award applies. The underlying cause of action was for breach of contract and thus there was no question as to the fee provision's applicability. While the Agreements' fee provisions are broad, the Court does not find them so broad as to apply to claims only tangentially related to the Agreements. Accordingly, the fee provisions do not warrant attorney's fees in this matter, and the Court will reverse the Bankruptcy Court's award of Appellees' attorney's fees and costs.

**IT IS THEREFORE ORDERED** affirming in part and reversing in part the Bankruptcy Court's Order. The Court affirms the Bankruptcy Court's dismissal of all of WVSV's claims. It reverses the Bankruptcy Court's awarding of attorney's fees to Appellees 10K and 10K Members.

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this matter.

Dated this 19th day of October, 2021.

Honorable John J. Tuchi
United States District Judge